Curia, per Dupjkin, Chancellor.
This court agree with the presiding chancellor that, under the will of Alexander Donald, his grand children took a vested interest transmissible to their legal representatives. They also think that, on the death of Mary Ann Donald, (one of the .grand children,) the statute of limitations would not commence to run until administration had on her estate.
The bill is filed for partition against Robert D. Gray, the grandson, and James Donald, who married the other grand-daughter of the testator, and the other defendants, who hold and claim the ne-groes under the several purchases particularly set forth in the decree of the chancellor. In the judgment of the circuit court, and in which this court concur, the legal title to one-third of the ne-groes, which passed under the will of the testator,, vested in the *338 administrator of Mary Ann Donald. Before inquiring whether the plea of a purchaser for valuable consideration, without notice, will avail against' a legal title, it is proper to remark, that the bill in this case, sought for no discovery of deeds, or other matter which might expose or impeach the title of the defendants. Prior to .the act of 1791, no partition of personalty could be made but in the court of chancery. The provisions of that act, ánd the practice under it, have been confined to cases of intestacy. The complainant comes into this court simply on the ground that the law has provided no mode of enforcing his legal right in the ordinary tribunals of justice. He seeks no discovery from the defendants, and no aid from the court in making out the validity of his title.
It is admitted, that there exists some apparent conflict in the English decisions on this subject. It is supposed by the chancellor, that they may be reconciled on this ground, that, where there is a concurrent jurisdiction, .and the complainant having the legal title, applies to this court, the plea shall not avail, if he could recover at law without the aid of this court, because, he should not be driven to a circuity of. action ; but that if he could not recover at law, although he have' the legal title, this court would not assist him against a purchaser for valuable consideration, without notice. Adopting this distinction, the bill was-dismissed, because, in the opinion of the circuit court, a tenant in common of a chattel cannot maintain trover against a purchaser from his' co-tenant, and thereby calling in question the authority of Henry v. Means in this particular. If the complainant had been the exclusive owner of the negroes, and had filed a bill for a delivery and account of the hire, it is quite clear, on the case of Heyward v. Glover, Riley, 53, that the bill might have been maintained* and in the opinion of the chancellor, as he might also have recovered at law, the plea of purchase for valuable consideration would not have availed the defendants ; but, inasmuch as he is part owner, and is supposed to have no remedy at law, he is also barred by the plea from any relief in chancery. The court are not quite satisfied with the principle of this distinction, or that it is the foundation of the diversity in the decisions which are found in the books. All the authorities which have been cited are on bills filed for the discovery of title *339 deeds, and, in many of the earlier, as well as the latest English cases, to such bills the plea of the purchaser has not been allowed to prevail against the legal title. Such was the case of Rogers v. Seale, decided in 1681, Freem., 84, in which the plea was overruled on this difference, that “ where the plaintiff hath á title in law, there, though the defendant doth purchase without notice, yet he shall discover writings; but otherwise it is if the plaintiff hath only a title in equity; for there, if the defendant purchased without notice, he shall never discover, nor make good, the plaintiff’s title; ” and so of Strode v. Blackburn, 3 Ves. jr., 222; Williams v. Lambe, 3 Bro. C. C., 264, and Collins v. Archer, 4. Eng. Cond. C. C., 428, decided by Sir Jno. Leach, as late as February, 1830. It is true, that the authority of these cases has been called in question; but it is proper to inquire upon what ground. In Aston v. Aston, 3 Atk. 302, Lord Hardwicke places his decision expressly on the ground that the purchaser shall not be compelled to make any discovery of title deeds, because, if produced, they might overturn his title at law. In Hoare v. Parker, 1 Bro. C. C., 578, Lord Thurlow says, “ a purchaser for valuable consideration, without notice, is not bound in conscience to assist the right owner in the legal recovery of the subject purchased under-such circumstances.” Lord Rosslyn in Jerrard v. Saunders, 2 Ves., jr., 458, refuses to compel a purchaser, who has fully, and in the most precise terms denied all the circumstances from which notice may be inferred, to make any discovery which' was to blot and rip up his title.” He adds, “ I believe it has been decided, that against a purchaser for valuable consideration, without notice, you cannot even have a bill to perpetuate testimony.” On this last suggestion, it is proposed, hereafter to offer the observation of later authorities.— Walwyn v. Lee, 9 Ves., 32, is the most recent case which has been adduced in favor of the plea. The object of the bill was for the discovery of title deeds, and for nothing else. The legal owner was in possession of the estate ; and he filed a bill against the mortgagee of the tenant for life, for a discovery and delivery of the title deeds, &c., which he had procured. Lord Eldon hesitated whether he should take any step. “ I apprehend,” says he, “ there is sufficient ground for saying, a man, who has honestly *340 dealt for valuable consideration, without notice, shall not be called upon by confessions' wrung from his conscience to say, he has missed his object to the extent in which he meant to acquire it.” The plea having stood a considerable time for judgment, was allowed. All the cases, in which the plea has been sustained, proceed on the principle that a defendant, in such situation, ought not to be compelled to make a discovery which may be injurious to himself. “ There would be no conscience, no equity, no good discretion even,” says Lord Eldon in Strode v. Blackburne, “ to enable the court to call upon the defendant, having paid money for the land without notice, (a title perfectly founded in conscience, if it has any foundation,) to set forth his title.” He adds, however, that, “ though the court would not call upon him to set out by what means he derives his title, yet there are cases where the court would have no hesitation to make him describe the thing of which he is in possession.” And he adverts to the common case of goods, for which trover or detinue lies, and the plaintiff avers that he is in such circumstances that he cannot describe them, and requires an account to be given to enable him to do so. In the very well considered case of Snelgrove v. Snelgrove, 4 Eq. R., 289, Chancellor Desaussure, after a review of all the English authorities, inclines to the opinion, that the preponderance of authorities is against the plea. He says, “ it should be remembered that the plea protects, by the court refusing to aid the complainant in setting up a title. Now, when the title attempted to be set up is an equitable one, it seems very reasonable that the court should forbear to give its assistance in setting up such equitable title against another title set up by a fair purchaser. But when the complainant comes with a legal title, I do not perceive how he can be refused the aid of the court. It seems no longer to be optional.” It is true, that this was a circuit decision from which no appeal was taken, as the case was afterwards compromised. Without undertaking to reconcile the authorities, or to determine between them, this court is prepared to say that, where no discovery is sought, which may jeopardize the title of the defendant, the plea of purchase for valuable consideration will not avail against a plaintiff having the legal title. It is doubtful if any authority can be found which ex *341 tends the protection farther. When Lord Rosslyn intimates his impression that it has been decided that a bill to perpetuate testimony will not lie against such purchaser, he probably had in his mind the case of Freaborne v. Clifton, reported in Vernon, and also in Eq. Ca. Abr. But Lord Eldon, in the case of Lord Dursley v. Fitzharding, 6 Ves., 262, says, he “ had been furnished with an extract from that case in the Register’s book, from which it appeared that the case amounted to no decision at all.” After stating the case, his Lordship adds, “ that is by no means an authority, that, if two persons are claiming a reversion, where one only can be entitled to it, a bill to perpetuate testimony will not lie. Nor did it establish a principle which I think very difficult to maintain, that, if one of them had sold his title to a third person, a hill to perpetuate testimony could not be maintained, for such a hill calls for no discovery from the defendant; but merely prays to secure that testimony which might be had at that time, if the circumstances called for it.” See also, the opinion of Mr. Justice Story, in a note to Story,Eq. PL, 622.
The court are of opinion that the plea should have been overruled.
A majority, of the court also think, that the children of Sarah, born before making the will, did not pass, and that the case cannot be distinguished in principle, from Seibles & Whatley, 2 Hill, C. R., 603.
Some of the defendants hold under purchases from West Donald, who survived his wife, Mary Ann Donald. It is sufficiently manifest that there could be no creditors, and the husband would therefore be entitled to one-third of her interest, which must enure to the benefit of his vendees.
From the decree of the chancellor, it seems not to have been very clearly proved, which of the children of Sarah were born prior to the making of the will, or the death of the testator. He also states, that neither James Donald nor Robert D. Gray were properly before the court, and, although there was some suggestion at the bar that this may have been a misapprehension, the court are yet uninformed on the subject. On these points further inquiry must be had.
Burt, for the motion.
Wardlaw, contra.
It is ordered and decreed, that the decree of the circuit court be reversed — that the negro Sarah be sold by the commissioner of Abbeville district, and one-third of the proceeds be paid to-the complainant, Jno. A. Donald, adm’r of Mary Ann Donald: — that the slave Frank be also sold by the commissioner, and two-ninths of the proceeds be paid to the complainants, and that the defendants, Jane Robertson, and Thos. J. Douglas, account respectively for the hire of Sarah and Frank since the filing of this bill — that on all other matters, the case be sent back to the circuit court for examination of the facts, and for final adjudication on the principles of this decree.
David Johnson, Chancellor, concurred.